OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

February 26, 1999

The Honorable Judith Zaffirini
Chair, Human Services Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. JC-0004

Re: Whether a county is authorized to invest county permanent school fund proceeds in "pass-through" mortgage-backed securities at an interest rate that is below market rate for comparable securities to assist in providing low-income housing in the county (RQ-887)

Dear Senator Zaffirini:

On behalf of Webb County, you ask whether a county is authorized to invest county permanent school fund proceeds in "pass-through" mortgage-backed securities[1] at an interest rate that is below market rate for comparable securities. Your request letter suggests that the crucial legal question is whether the contemplated investment is authorized by the Public Funds Investment Act, TEX. GOV'T CODE ANN. ch. 2256 (Vernon 1999), particularly Government Code sections 2256.009 and 2256.024. We do not reach the Public Funds Investment Act, however, because we conclude that article VII, section 6 of the Texas Constitution precludes the county from making such an investment on behalf of the county permanent school fund.

Article VII, section 6 provides in pertinent part that county school lands "and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein; said proceeds to be invested in bonds of the United States, the State of Texas, or counties in said State, or in such other securities, and under such restrictions as may be prescribed by law. . . ." TEX. CONST. art. VII, § 6. Numerous court opinions and opinions of this office treat a county permanent school fund as a trust and stress the fiduciary nature of a county's duty to invest the county permanent school fund on behalf of public schools in the county. *See, e.g., Delta County v. Blackburn*, 93 S.W. 419, 422 (Tex. 1906) (counties are trustees for benefit of state's public schools); *Comanche County v. Burks*, 166 S.W. 470, 473-74 (Tex. Civ. App.–Fort Worth 1914, writ ref'd); *County School Trustees v. Brazoria County*, 240 S.W. 675, 676 (Tex. Civ. App.–Galveston 1922, no writ) (county held fund as trustee for schools); *see also* Tex. Att'y Gen. Op. Nos. H-506

---

[1] The term "pass-through" is used to describe a mortgage-backed security for which the payments on the underlying mortgages are passed from the mortgage holder through the servicing agent to the security holder. The servicing agent usually keeps a portion of the payments as a fee. *See* DAVID A. FRANKLIN, GLOSSARY OF PUBLIC FINANCE TERMINOLOGY 30 (1992).

(1975) at 2 (county commissioners court acts in fiduciary capacity as trustee of permanent school fund), H-239 (1974) at 1 ("The county permanent school fund is impressed with a trust in favor of the local inhabitants and schools, and the commissioners court administers the fund as trustee, with the duties of trustee."), M-1104 (1972) (applying Texas Trust Act to county permanent school fund), V-1089 (1950) at 3 (commissioners court is trustee of permanent school fund; if commissioners court abused its discretion by failing to invest fund for benefit of permanent school fund, order would not be valid). As one court has stated,

> The county for which [the county commissioners] act holds the proceeds as an *express trust*, and the investment thereof in the securities named in the Constitution or otherwise, as may be prescribed by law, necessarily involves an exercise of judgment and discretion.
>
> . . . .
>
> [W]e see no reason why the county should not be held to the same rules of law that are applicable to other trustees.

*Burks*, 166 S.W. at 473-74 (emphasis added).

Relying on the foregoing authority, this office has applied statutory provisions applicable to trusts generally to county permanent school funds. *See* Tex. Att'y Gen. Op. No. M-1104 (1972) at 2. Noting that under the Texas Trust Act a trustee could not sell property to the trust, this office concluded that county commissioners could not sell to the county's permanent school fund bonds or other securities issued by the county while serving as trustees of the fund. *Id.* In addition, reasoning that a trustee must "exercise the judgment and care under the circumstances then prevailing, which men of ordinary prudence, discretion and intelligence exercise in the management of their own affairs," this office concluded that the proposed investment was also impermissible because of the low interest rate on the securities to be purchased. *Id.* at 2-3. The opinion emphasized that "great caution should be exercised [by the county commissioners court] to insure that the highest prevailing rate of interest, consistent with investment safety, is secured on any investment of county permanent school funds, and that said funds are invested in securities other than those issued by the trustee-commissioners." *Id.* at 3.

"The 'prudent' character of an investment is ordinarily one of fact, unless reasonable minds could not disagree." Tex. Att'y Gen. Op. No. H-239 (1974) at 2. In one opinion, however, this office concluded that courts would consider the investment of county permanent school fund proceeds in low-interest bearing independent school district bonds imprudent as a matter of law. *Id.*

Your letter states that although the "pass-through" mortgage-backed securities would yield more than present county permanent school fund investments, the county would receive below market rate for similar securities available in the market, explaining that the purpose of the program "is to assist in providing housing to a segment of Webb County's population that otherwise could not afford it . . . . Investment in the securities also will further the public purpose of providing low

income housing in an area with an urgent need for such assistance." We assume, based on your description of the other similar securities as "comparable," that the similar securities pose no greater risk.

Based on the facts you have provided, we believe that a court would very likely conclude that the proposed investment is imprudent as a matter of law. First, it is doubtful that a prudent investor would select the securities the county proposes to purchase on behalf of the permanent school fund, given that other, similar securities available in the market would yield more at no greater risk. Furthermore, although facilitating the provision of low-income housing pursuant to certain statutes is a legitimate public purpose of the county,[2] the county's duty of loyalty to the county permanent school fund trust precludes it from pursuing this county purpose in investing permanent school fund proceeds at the expense of the trust. Based on the information provided, we believe that a court would conclude that the investments you describe are not consistent with the county's constitutionally-imposed fiduciary duty to the beneficiaries of the county permanent school fund.[3]

---

[2]*See* TEX. LOCAL GOV'T CODE ANN. chs. 392, 394 (Vernon 1998 & Supp. 1999) (authorizing counties to establish housing authorities and housing finance corporations); *see also* TEX. GOV'T CODE ANN. § 2256.024(c) (Vernon 1999) (permitting housing bond programs operated by county housing authorities and county housing finance corporations to purchase mortgage pass-through certificates and individual mortgage loans). We do not address here whether a county may assist in providing low-income housing other than pursuant to these statutory provisions. *See, e.g.,* Tex. Att'y Gen. Op. No. JM-942 (1988) at 3 (concluding that commissioners courts lack authority to guarantee loans for housing purposes).

[3]Under the Texas Trust Code, a trustee who commits a breach of trust is chargeable with any damages arising from the breach of trust, including any profit that would have accrued to the trust if there had been no breach of trust. *See* TEX. PROP. CODE ANN. § 114.001(c)(3) (Vernon 1995).

## S U M M A R Y

A county's plan to invest county permanent school fund proceeds in "pass-through" mortgage-backed securities at an interest rate that is below market rate for similar securities available in the market in order to assist in providing low-income housing in the county is not consistent with the county's trustee duties with respect to the fund under article VII, section 6 of the Texas Constitution.

Very truly yours,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General