

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

March 31, 2015

The Honorable Marco A. Montemayor
Webb County Attorney
1110 Washington Street, Suite 301
Laredo, Texas 78040

Opinion No. KP-0011

Re: Whether a public school district may expend funds for the management of county school lands to determine if a lessee of a mineral estate is fulfilling its duty to explore and develop the mineral estate (RQ-1225-GA)

Dear Mr. Montemayor:

You originally requested an opinion concerning whether a public school district may expend funds to "determine if the lessee of the mineral estate [on county school lands] is carrying out its duty to explore and develop said mineral estate."[1] In a supplemental request, you also asked whether a county may sell the county school lands to the school districts of the county for a nominal fee without complying with notice and bidding requirements of the Local Government Code.[2]

Your requests concern the public school lands granted to Webb County for the benefit of education in the county. Beginning in 1838, the Republic of Texas granted land to each county to fund the establishment of public schools. *See* TEX. CONST. art. VII, § 6, interp. commentary. While most counties in Texas have sold their county school lands and invested the proceeds in authorized securities, Webb County continues to own county school lands and has leased the mineral rights on those lands. *See* 36 David B. Brooks, *Tex. Practice Series: Cnty. & Special Dist. Law* § 30.2 (2d ed. 2002); Request Letter at 1; *see also Ehlinger v. Clark*, 8 S.W.2d 666, 670 (Tex. 1928) (acknowledging a commissioners court's authority to sell the mineral estate on county school lands). You further explain that production and revenue from the lease has been minimal, while the surrounding lands have "seen unprecedented production." Request Letter at 1. You therefore question whether Webb County school districts may allocate funds "to obtain data through a royalty audit, the hiring of a private gauger, and a helicopter survey to determine if the lessee is exploring the mineral estate" as it should. *Id.* at 1–2.

---

[1]Letter from Honorable Marco A. Montemayor, Webb Cnty. Att'y, to Honorable Greg Abbott, Tex. Att'y Gen. at 1 (Oct. 1, 2014), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

[2]Letter from Honorable Marco A. Montemayor, Webb Cnty. Att'y, to Honorable Greg Abbott, Tex. Att'y Gen. at 1 (Jan. 13, 2015), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Supp. Request Letter").

Article VII, section 6 of the Texas Constitution governs the ownership, management, and disposition of county school lands, providing that:

> All lands heretofore, or hereafter granted to the several counties of this State for educational purposes, are of right the property of said counties respectively. . . . Each county may sell or dispose of its lands in whole or in part, in manner to be provided by the Commissioners Court of the county.  Said lands, and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein; . . . and the counties shall be responsible for all investments; the interest thereon, and other revenue, except the principal shall be available fund.

TEX. CONST. art. VII, § 6.  The constitutional provision creates an "express trust" in which the commissioners court acts as trustee of the county school lands for the benefit of the public schools in the county.  *Comanche Cnty. v. Burks*, 166 S.W. 470, 473 (Tex. Civ. App.—Fort Worth 1914, writ ref'd); *see also* TEX. EDUC. CODE ANN. § 45.113(b) (West 2012) (making members of the county commissioners court the "sole trustees" of the trust).  As trustee, the commissioners court has "the constitutional and statutory duty" of ensuring that contracts entered into related to county school lands are carried out by the contracting parties.  *See Ehlinger*, 8 S.W.2d at 674.

Construing article VII, section 6, the Texas Supreme Court has held that a county commissioners court may not delegate its authority and responsibility over county school lands.  *See, e.g., Williams v. Pure Oil Co.*, 78 S.W.2d 929, 931 (Tex. 1935); *Logan v. Stephens Cnty.*, 83 S.W. 365, 368 (Tex. 1904).  With regard to school districts specifically, this office has advised that "a county may not delegate its article VII, section 6 responsibilities to the school districts in the county."  Tex. Att'y Gen. Op. Nos. GA-0616 (2008) at 3, JC-0399 (2001) at 5.

Furthermore, court decisions and opinions from this office have concluded that the county must incur the expenses associated with exercising authority under article VII, section 6.  In addressing expenses incurred in selling county school lands, the Texas Supreme Court has explained that "it was intended that such expenses should be paid by the county from its general fund."  *Dallas Cnty. v. Club Land & Cattle Co.*, 66 S.W. 294, 297 (Tex. 1902) (prohibiting a county from conveying a portion of county school land as consideration for surveying it).  The Court then explained its rationale:

> [I]t may be urged that, since the county is made a mere trustee, it is unreasonable to suppose that it was intended to charge it in its individual capacity with the expense of administering the trust fund.  The answer is that while, in legal contemplation, the county is but a trustee, and the school fund the beneficiary, the county has an important interest in the maintenance of public schools within its limits; and that it is not unreasonable . . . to make the expense of administering a fund set apart for the support of public schools in the county a charge upon its general revenue.

*Id.* A more recent opinion from this office, relying on *Dallas County*, likewise concluded that "a county must bear its expenses to administer the constitutional trust under article VII, section 6." Tex. Att'y Gen. Op. No. GA-0616 (2008) at 4 (concluding that a county and school districts in the county may not jointly develop or sell rights to natural resources and minerals in county school land). Although we find no authority specifically addressing the county's ability to recoup expenses associated with the investigation of a mineral lessee's exploration and development on county school lands, these authorities suggest that a court would likely conclude that the county, not the school districts within the county, should pay out of county funds any expenses incurred in fulfilling its constitutional duties as trustee of county school lands.

With regard to your first question, you ask whether a school district may allocate funds for these purposes under Education Code section 45.105. Request Letter at 1. Section 45.105 authorizes local school funds to be used, among other reasons, for "purposes necessary in the conduct of the public schools determined by the board of trustees." TEX. EDUC. CODE ANN. § 45.105(c) (West 2012). While this provision gives a board broad discretion to use local school funds, "school funds cannot be expended . . . unless the trustees first determine that such an expenditure is 'necessary.'" *City of Garland v. Garland Indep. Sch. Dist.*, 468 S.W.2d 110, 111–12 (Tex. Civ. App.—Dallas 1971, writ ref'd n.r.e.) (interpreting prior version of section 45.105). It will be up to the board of trustees to determine, in the first instance and subject to judicial review, whether an expenditure to investigate mineral production on county school lands is necessary. Because a county must bear its expenses to administer the constitutional trust under article VII, section 6, however, a court could have reason to conclude that a school district's allocation for such purposes is not necessary and therefore not authorized under section 45.105. This opinion does not address the issue of whether a school district may expend funds to ensure that the trustee is carrying out its fiduciary obligations to the school district or whether the school district could recover any costs to enforce these rights as a beneficiary against the trustee.

Your supplemental request asks whether Webb County may sell the Webb County School Lands to the school districts of Webb County for a nominal fee. Supp. Request Letter at 1. While article VII, section 6 expressly authorizes a commissioners court to sell county school lands, the county "alone" must hold the proceeds of the sale "as a trust for the benefit of public schools therein; . . . and the counties shall be responsible for all investments; the interest thereon, and other revenue, except the principal shall be available fund." TEX. CONST. art. VII, § 6. Numerous court opinions and opinions of this office emphasize the fiduciary nature of a county's duty with regard to county school lands and the county school land fund. *See, e.g., Delta Cnty. v. Blackburn*, 93 S.W. 419, 422 (Tex. 1906) (concluding that counties are trustees for the benefit of the state's public schools), *Cnty. Sch. Trs. v. Brazoria Cnty.*, 240 S.W. 675, 676 (Tex. Civ. App.—Galveston 1922, no writ); *see also* Tex. Att'y Gen. Op. Nos. JC-0004 (1999) at 2–3 (holding the county, as trustee of county school lands, to the prudent investor standard), H-506 (1975) at 2 (explaining that the commissioners court acts in a fiduciary capacity as trustee of the county permanent school fund).

A county acting as trustee of the county school lands is "held to the same rules of law that are applicable to other trustees." *Comanche Cnty.*, 166 S.W. at 474. Selling the county school lands for a nominal fee would be inconsistent with the trustees' duty to manage the property "as a prudent investor would." TEX. PROP. CODE ANN. § 117.004(a) (West 2014) (describing the general

standard of care under the Texas Trust Code); *see* Tex. Att'y Gen. Op. No. JC-0004 (1999) at 3 (concluding that certain investments were not consistent with the county's fiduciary duty with regard to the county permanent school fund). The fact that the county desires to sell the county school lands to the school districts, the beneficiaries of the trust, does not alter this analysis. As discussed above, members of the commissioners court are the "sole trustees" of the trust established for the permanent school fund, and they may not delegate their authority and responsibility to the county's school districts. TEX. EDUC. CODE ANN. § 45.113(b) (West 2012). Selling county school lands to the school districts for a nominal fee would, in essence, delegate the commissioners' responsibility as trustees, violating long-established case law to the contrary. Thus, Webb County may not sell the county school lands to the school districts within Webb County for a nominal fee.

## SUMMARY

The Texas Supreme Court has concluded that article VII, section 6 of the Texas Constitution requires the county to pay out of its own funds any expenses incurred in fulfilling the county's constitutional duties as trustee of county school lands. Thus, a court could have reason to conclude that a school district's allocation of funds to determine if a lessee is exploring and developing the mineral estate on county school lands is not necessary and therefore not authorized under section 45.105 of the Education Code.

A county commissioners court acts as sole trustee of the county school lands for the benefit of the public schools in the county. The commissioners court may not delegate its trustee responsibilities to the school districts in the county. Selling county school lands for a nominal fee to the county school districts would be inconsistent with the trustees' duty to manage the property as a prudent investor would.

Very truly yours,

KEN PAXTON
Attorney General of Texas


CHARLES E. ROY
First Assistant Attorney General

BRANTLEY STARR
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee
Assistant Attorney General, Opinion Committee